IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| RICKY R. CANNIDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-154 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Ricky Ricardo Cannida appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.  BACKGROUND**

Plaintiff was born on August 2, 1965. Tr. ("R."), p. 194. He completed the seventh grade in special education classes and has no work history. R. 39, 42-43, 197, 204-05. He protectively applied for SSI on July 26, 2011, alleging a disability onset date of September 1, 2001. R. 119-25, 194. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 55-59. Plaintiff then requested a hearing before an Administrative

Law Judge ("ALJ"), R. 78-80, which was held on August 7, 2012. R. 34-54. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Clarence Hulett, a Vocational Expert ("VE"). Id. On November 27, 2012, the ALJ issued an unfavorable decision. R. 16-28.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since July 26, 2011, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: post surgical repair to hip and ankle, seizure disorder, and borderline intellectual functioning ("BIF") (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c).[1] The claimant can lift up to 50 pounds occasionally; lift or carry up to 25 pounds frequently; stand or walk for approximately 6 hours in an 8-hour workday with normal breaks; and sit intermittently throughout the day. The claimant should never engage in the climbing of ladders, ropes or scaffolds. The claimant is limited to unskilled work and should avoid all exposure to hazards, such as unprotected heights and dangerous equipment. The claimant has no past relevant work. (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including dishwasher and stocker (20 C.F.R. §§ 416.969 and 416.969(a)). The claimant has not been under a disability, as defined in the Social Security Act, since July 26, 2011, the date the application was filed (20 C.F.R. § 416.920(g)).

---

[1]"Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

2

R. 21-28.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ did not find that he qualified for automatic disability under Listing 12.05(B) or 12.05(C), both of which pertain to intellectual disability.[2] (See doc. no. 12 ("Pl.'s Br.").) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 13 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[2]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

3

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

Plaintiff argues the ALJ erred at step three of the sequential evaluation in failing to find that he satisfies Listing 12.05(B) or 12.05(C). (Pl.'s Br., pp. 3-7.) The Commissioner counters that Plaintiff did not prove he satisfies Listing 12.05(B) or 12.05(C). (Comm'r's Br., pp. 3-9.) As set forth below, Plaintiff's arguments fail because the ALJ properly relied on substantial

4

evidence in finding Plaintiff's IQ scores are not valid, see R. 23-27, and thus the record evidence does not support that he satisfies Listing 12.05(B) or 12.05(C).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing

5

12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05(B) is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Alternatively, 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff needs to show that the impairment "significantly limits [his] physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." Willard v. Colvin, No. 5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing 12.00(A).)

In the context of mental disorders, the regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(a). Likewise, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give

6

rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

Plaintiff's argument that he meets the requirements of Listing 12.05(B) or (C) based on his IQ scores in the record is without merit. (Pl.'s Br., pp. 3-6.) As the ALJ explained, four IQ tests administered to Plaintiff when he was an adult are not valid based on the consultative examiners' narrative statements. First, consultative examiner Dr. Douglas Payne evaluated Plaintiff in September 2002. R. 23-24, 286. Plaintiff obtained IQ scores in the range of 46 to 51. R. 286. However, Dr. Payne opined that the IQ results were reduced by the effect of Plaintiff's medications because Plaintiff's eyes were "half shut and he dozed" during administration of the tests. R. 23, 286.

Second, in May 2008, Plaintiff received IQ scores between 49 and 55 on testing conducted by consultative examiner Dr. John Whitley, III. R. 23, 25, 311. However, Dr. Whitley opined that the results were an underestimation of Plaintiff's true ability because he was minimally cooperative and gave up easily on test items. R. 23, 25, 310. Third, Dr. Whitley also administered IQ tests to Plaintiff in 2011, which yielded a full scale IQ of 41. R. 23, 25-26, 445. However, Dr. Whitley again opined that Plaintiff was likely functioning in the borderline range and Plaintiff's test results were an underestimation of Plaintiff's abilities because he gave poor effort and was malingering. R. 23, 25-26, 445, 447.

Lastly, in January 2012, consultative examiner Dr. Edwin Sperr administered another set of IQ tests, but he was unable to calculate IQ scores because Plaintiff demonstrated poor motivation during testing. R. 26, 452. Dr. Sperr opined that Plaintiff's poor motivation was

7

"consistent with his performance when tested by Dr. Whitley." R. 452.

Plaintiff asserts that, despite the statements about Plaintiff's scores being affected by his poor effort and medication, the above evidence supports a conclusion that Plaintiff "operates in the mildly to moderately retarded range." (Pl's Br., p. 5.) However, an ALJ may rely on statements by examiners that an IQ score was compromised by Plaintiff's poor effort or medication to determine the scores are not valid. See Smith v. Comm'r of Soc. Sec., 535 F. App'x 894, 897 (11th Cir. 2013) ("[T]he record supports the conclusion that, due to her limited effort during examination and apparent fatigue, [the claimant's] IQ scores were not valid and underestimated her actual level of functioning"); Monroe v. Comm'r of Soc. Sec. Admin., 569 F. App'x 833, 835 (11th Cir. 2014) (upholding rejection of IQ scores because physician noted scores were compromised by side effects of medication); see also Cammon v. Astrue, No. 3:08-cv-0131-JFK, 2009 WL 3245458, at *10 (N.D. Ga. Oct. 5, 2009) (finding ALJ reasonably concluded claimant's IQ scores were invalid where examiner opined claimant put forth limited effort); Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1205, 1208 (S.D. Ala. 2002) (affirming rejection of IQ scores because, *inter alia*, the claimant "exhibited minimal effort during the testing").

Here, Drs. Payne, Whitley, and Sperr all questioned the validity of Plaintiff's IQ scores. R. 23-26, 286, 310, 445, 447. Drs. Whitley and Sperr stated that Plaintiff's IQ scores were an underestimation because of his poor effort during testing. R. 23, 25-26. Dr. Payne found that Plaintiff's IQ score was compromised by his medication. R. 23-24, 286. Additionally, in evaluating Plaintiff's IQ scores, the ALJ also gave great weight to the opinion of state agency consultant Dr. Diane Kogut, who reviewed the record in January 2012 and opined that testing had not produced a valid IQ score because Plaintiff's poor effort

and medication compromised his IQ scores. R. 26, 470. An ALJ may give state agency consultant opinions great weight if substantial evidence supports them. Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council, SSR 96-6P (S.S.A. July 2, 1996). Thus, substantial evidence supports the ALJ's decision that Plaintiff's adult IQ scores were not valid. R. 23-26.

Plaintiff's argument that results of an IQ test from his school records in 1976 show he meets Listings 12.05(B) or (C) is also without merit. Education records from the Richmond County Board of Education indicate Plaintiff underwent a cognitive abilities test in October 1976, when Plaintiff was only eleven years old, and received a verbal raw score of 50 and a standard verbal score of 69. R. 269. However, test results from age eleven are considered current for only two years. See 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(D)(10) ("IQ test results obtained between ages 7 and 16 should be considered current . . . for 2 years when the IQ is 40 or above."). Therefore, Plaintiff's childhood IQ scores do not satisfy Listing 12.05. See, e.g., Seabrooks v. Colvin, No. 5:13cv89/EMT, 2014 WL 5483169, at *10 (N.D. Fla. Oct. 29, 2014) (finding that remote IQ scores assessed prior to age 16 are not valid for the purpose of satisfying Listing 12.05); Phelps v. Colvin, No. 5:13-cv-206 (MTT), 2014 WL 4629170, at *4 (M.D. Ga. Sept. 15, 2014) (same); Self v. Colvin, No. 6:12-CV-00846-AKK, 2014 WL 426630, at *4 (N.D. Ala. Feb. 4, 2014) (same); Stutts v. Astrue, 489 F.Supp.2d 1291, 1293 (N.D. Ala. 2007) ("Because these IQ scores were achieved before the plaintiff reached the age of 16, they are not deemed to be valid as to the plaintiff's current level of intellectual functioning.").

In sum, substantial evidence supports the ALJ's conclusion that Plaintiff's IQ scores are invalid and Plaintiff does not meet Listing 12.05(B) or (C).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 19th day of June, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA